IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Case 3:17CR126-RJC-DSC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **MONEY JUDGMENT AND** |
| | ) | **PRELIMINARY ORDER OF** |
| v. | ) | **FORFEITURE** |
| | ) | |
| | ) | |
| CHARLES WHITLOCK, JR. | ) | |

THIS MATTER is before the Court on the United States of America's Motion for Money Judgment and Preliminary Order of Forfeiture, (Doc. No. 39), to which the defendant has not objected. The United States files its Motion pursuant to Fed. R. Crim. P. 32.2(b), 18 U.S.C. § 982(a)(2)(A), and 21 U.S.C. § 853(p). The United States requests that the Court enter:

- A $229,783.18 forfeiture Money Judgment against Defendant; and

- A Preliminary Order of Forfeiture for approximately $9,750.50 in United States Currency seized during the course of the investigation of this matter.

For the reasons set forth below, this Court hereby finds that the United States has stated cause, by a preponderance of the evidence, for the Motion. Therefore, this Court will grant the Motion. The Court finds and concludes as follows:

### I. BACKGROUND

In April 2017, a Grand Jury returned a Bill of Indictment, (Doc. No. 3), against Defendant, charging him with mail, wire, and bank fraud, all such charges based on his use of so-called "synthetic identities" to obtain credit cards. Defendant ultimately pled guilty to bank fraud, (Doc. No. 27), pursuant to a Plea Agreement, (Doc. No. 25). The Plea Agreement contained a provision for consent to forfeiture of seized items. (Doc. No. 25 at ¶ 10).

As set forth more fully in the Factual Basis, (Doc. No. 26), and the sentencing record,

Defendant agreed that he used the illegally obtained credit cards to (1) obtain money, goods, and services through electronic payments at point-of-sale terminals; (2) obtain money from automated teller machines; and (3) obtain money through merchant accounts accessible to Defendant. At sentencing, this Court ordered Defendant to pay $310,268.51 in restitution to a victim financial institution, such figure calculated based on the value of money and property that the financial institution paid out as a result of the scheme, less credit for $9,181.82 that the defense argued that Defendant repaid. The Court indicated that it would leave the issue of forfeiture open pending the instant submission by the Government and Defendant's opportunity to respond.

## II. LEGAL CONCLUSIONS

### A. Overview of Law Authorizing Forfeiture

Title 18 U.S.C. § 982(a)(2)(A) authorizes forfeiture of property that a defendant obtains, directly or indirectly, that constitutes or derives from proceeds of bank fraud. Further, 28 U.S.C. § 2461(c) renders the substitute property provisions of 21 U.S.C. § 853(p) applicable in a bank fraud case. "Substitute property" of a defendant is subject to forfeiture under 21 U.S.C. § 853(p)(2) when, *inter alia*, proceeds cannot be located or one of the other criteria in Section 853(p)(1) is met. Finally, Fed. R. Crim. P. 32.2(b)(1)(A) and (B) authorizes a court to review evidence and information on the record and enter a money judgment for the proceeds of the crime, as well as a preliminary order of forfeiture for properties where there is a nexus between the properties and the crime.

The Government's burden of proof on forfeiture is preponderance of the evidence. *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003); *United States v. Tanner*, 61 F.3d 231, 233 (4th Cir. 1995). The Court's "determination may be based on evidence already in the

record, including [ . . . ] any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Farkas*, 474 Fed. Appx. 349, 360 (4th Cir. 2013) (court may rely on trial record to determine forfeiture). The Government may satisfy the preponderance burden by both direct and circumstantial evidence. *United States v. St. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007).

      **B.**      **The Record and Law Support the $229,783.99 Money Judgment**

"If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A); *see also United States v. Butler*, 578 Fed. Appx. 178, 182 (4th Cir. 2014) (district court must find nexus between forfeiture calculation and crime). In this case, the Government has limited its request to a conservative calculation of a Money Judgment equivalent to only the amount of net fraud proceeds that Defendant obtained from financial institutions—an amount even less than the restitution ordered at sentencing.

The Government has affixed to its Motion an Affidavit of United States Postal Inspector Randall Berkland, the case-agent, wherein Inspector Berkland details his efforts to calculate and, to no avail, find these proceeds. (Doc. No. 39-1). As set forth in Inspector Berkland's Affidavit, he tallied at least approximately $146,800 in POS-derived proceeds directed to accounts controlled by Defendant and his girlfriend, at least $133,965 of which was directed to accounts only controlled by Defendant. Further, Inspector Berkland calculated that, as a result of the fraud, Defendant obtained at least approximately $105,000 in goods, entertainment, and services. Thus, the total amount of proceeds attributable to Defendant is $238,965 (the sum of $133,965 in POS-derived proceeds and $105,000 in goods, entertainment, and services). The Government further advises in its Motion that, in an abundance of caution, the Government

3

deducts $9,181.82 in purported repayments by Defendant, to arrive at a total forfeiture money judgment figure of $229,783.18. (Doc. No. 39 at 4).

Under such circumstances, based on the record, 18 U.S.C. §§ 982(a)(2)(A) which authorizes forfeiture of proceeds of bank fraud, the substitute property provisions of 21 U.S.C. § 853(p) which authorize forfeiture of substitute property up to the amount of the proceeds, and Rule 32.2(b)(1)(A), this Court issues the Money Judgment for the fraud proceeds.

    **C.    The Record and Law Support Forfeiture of the Seized Currency**

Courts use a nexus test to determine whether assets constitute or are derived from proceeds. *Farkas*, 474 Fed. Appx. at 359, *citing*, *Libretti v. United States*, 516 U.S. 29 (1995) and *Cherry*, 330 F.3d at 669-70. Courts use the "but for" test to determine whether there is a nexus between a crime and properties that the Government contends are proceeds. "Pursuant to this test, [assets] are considered proceeds and therefore deemed forfeitable if 'a person would not have [the assets] but for the criminal offense.'" *Id.* at 359-60 (summarizing Seventh Circuit, D.C. Circuit, Second Circuit, and Eastern District of Virginia case-law and quoting the Western District of New York). Strict tracing from a particular criminal act to a particular asset is not required if the totality of the circumstances establish that the asset constitutes or is derived from proceeds. *See United States v. Smith*, 749 F.3d 465, 488 (6th Cir. 2014) (upholding forfeiture of cashier's checks drawn on Target Oil account when banking records showed that deposits of fraud proceeds into account greatly exceeded amount payable on checks and when Target Oil was used as a vehicle to commit fraud, so items connected to its revenue stream resulted directly or indirectly from fraud conspiracy); *United States v. Hailey*, 887 F. Supp. 2d 649, 653 (D. Md. Aug. 23, 2012) ("The government must trace the funds to the criminal course of conduct, but it need not trace them to a particular illegal act, to satisfy its burden."); *United States v. Farkas*,

2011 WL 51011752, at **3-5 (E.D. Va. Oct. 26, 2011) ("forfeiture provision is to be 'liberally construed to effectuate its remedial purpose;'" because Farkas's fraud enabled the business to remain *in business,* proceeds must be interpreted sufficiently broadly to capture gross receipts, even if receipts not directly attributable to a particular fraudulent loan), *aff'd*, 474 Fed. Appx. 349 (4th Cir. 2012); *Cf. United States v. Park*, 825 F. Supp. 2d 644, 648 (D. Md. 2011) (reasoning, on *ex parte* motion for a restraining order based on probable cause that assets were subject to forfeiture, that if a business would not have been solvent "but for the infusion of illegally-obtained funds, the entire business may be subject to forfeiture as the proceeds of the offense" and all of the assets of the business may be subject to forfeiture), *citing*, *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) *and Farkas*, 2011 WL 5101752.

In this case, as set forth in Inspector Berkland's Affidavit, upon the May 2017 execution of a Search Warrant at Defendant's residence, law enforcement recovered the $9,750.50 in United States Currency in a clothes dresser in the master bedroom. (Doc. No. 39-1 at ¶ 8). Law enforcement executed the Warrant at what would ultimately become the conclusion of Defendant's fraud scheme whereby he obtained at least $229,783.18 in proceeds. Further, as set forth in Inspector Berkland's Affidavit, Inspector Berkland has not identified legitimate employment or a legitimate source of income for Defendant during the charged time period. (Id. at ¶ 10). Finally, Defendant agreed in his Plea Agreement to forfeiture of seized items, like the currency, in this case. (Doc. No. 25 at 3-4). Accordingly, this Court finds a nexus between the seized currency and bank fraud, and orders the currency subject to forfeiture as bank fraud proceeds.

**IT IS, THEREFORE, ORDERS:**

1. a $229,783.18 forfeiture Money Judgment against Defendant, and authorizes the

United States to conduct discovery, as authorized in Fed. R. Crim. P. 32.2, to identify, locate, and dispose of forfeitable property; and

2. a Preliminary Order of Forfeiture for approximately $9,750.50 in United States Currency seized during the course of the investigation of this matter. The Government is hereby authorized to maintain custody of the property.

Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this order to the extent that it constitutes a Preliminary Order for the seized currency; notice of its intent to dispose of the property in such manner as the Attorney General may direct; and notice that any person, other than the Defendant, having or claiming a legal interest in any of the above-listed forfeited currency must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in property that is the subject of this Order, as a substitute for published notice as to those persons so notified.

Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture. If no petitions are filed, this Order shall become final by operation of law as provided for in Fed. R. Crim. P. 32.2(c)(2).

SO ORDERED

Signed: May 16, 2018

Robert J. Conrad, Jr.
United States District Judge